UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES—GENERAL

| Case No. | **EDCV 22-296 JGB (AGRx)** | Date | July 31, 2023 |
|---|---|---|---|
| Title | *Laurell Dawin Lewis v. Merrick B. Garland* | | |

Present: The Honorable   JESUS G. BERNAL, UNITED STATES DISTRICT JUDGE

| MAYNOR GALVEZ | Not Reported |
|---|---|
| Deputy Clerk | Court Reporter |

| Attorney(s) Present for Plaintiff(s): | Attorney(s) Present for Defendant(s): |
|---|---|
| None Present | None Present |

**Proceedings:** Order (1) GRANTING Petitioner's Motion for Preliminary Injunction (Dkt. No. 42) and (2) VACATING the August 7, 2023 Hearing (IN CHAMBERS)

Before the Court is a motion for preliminary injunction filed by Petitioner Laurell Dawin Lewis ("Petitioner" or "Mr. Lewis"). ("Motion," Dkt. No. 42.) The Court finds this matter appropriate for resolution without a hearing. See Fed. R. Civ. P. 78; L.R. 7-15. After considering the papers filed in support of and in opposition to the Motion, the Court **GRANTS** the Motion. The August 7, 2023 hearing is **VACATED**.

## I.   BACKGROUND

On February 16, 2022, Petitioner, who is detained in immigration custody pursuant to 8 U.S.C. § 1226(c), filed a petition for writ of habeas corpus. (Dkt. No. 1.) On June 12, 2023, the magistrate judge granted Petitioner's request to substitute attorneys instead of proceeding pro se. (Dkt. Nos. 40–41.) Also on June 12, 2023, Petitioner filed a motion for preliminary injunction. ("Motion," Dkt. No. 42.) In support of the Motion, Petitioner submitted his own declaration ("Lewis Decl.," Dkt. No. 42-1) and a declaration of his brother, Tymel Patrick ("Patrick Decl.," Dkt. No. 42-2). On June 16, 2023, Respondent Merrick B. Garland ("Respondent") opposed the Motion. ("Opposition," Dkt. No. 48.) In support of the Opposition, Respondent submitted a declaration of Emmanuel D. Juarez ("Juarez Decl.," Dkt. No. 47-1) and several exhibits. On June 26, 2023, Petitioner replied. ("Reply," Dkt. No. 49.)

//

## II. FACTS

Mr. Lewis was born in Guyana in 1981. (Lewis Decl. ¶ 2.) In 1986, at the age of five, he immigrated to the United States as a lawful permanent resident ("LPR") and has lived in the United States since. (Id.)

In 2000, Mr. Lewis was convicted in New York state court for two drug-related criminal offenses. (See Juarez Decl. ¶ 4.) In 2003, he was again convicted in New York state court for two drug-related criminal offenses. (See id.) In 2015, Mr. Lewis was convicted in the United States District Court for the Eastern District of New York for the offense of brandishing a firearm in furtherance of a crime, in violation of 18 U.S.C. § 924(c)(1)(A)(ii), and sentenced to ten years of imprisonment. (Id. ¶ 2.) Lewis has fully served his sentences. (Motion at 2.)

On August 27, 2020, the Department of Homeland Security ("DHS") charged Mr. Lewis with removability under 8 U.S.C. § 1227(a)(2)(A)(iii) based upon his conviction of an aggravated felony. (See Juarez Decl. ¶ 3; "Charges of Inadmissibility," Dkt. No. 47-3.) On the same day, after completing his federal criminal sentence, Mr. Lewis was transferred into civil immigration detention at the Adelanto ICE Processing Center ("Adelanto"), where he remains today. (See Motion at 5.) Mr. Lewis is detained pursuant to 8 U.S.C. § 1226(c). (Id.)

On January 6, 2021, Mr. Lewis appeared pro se in Immigration Court. (Juarez Decl. ¶ 6.) On March 8, 2021, the Immigration Court held a bond hearing under Rodriguez v. Holder, 2013 WL 5229795 (C.D. Cal. Aug. 6, 2013), aff'd in part, rev'd in part sub nom. Rodriguez v. Robbins, 804 F.3d 1060 (9th Cir. 2015), rev'd sub nom. Jennings v. Rodriguez, 138 S. Ct. 830 (2018), which required the government to prove by clear and convincing evidence that a detainee is a flight risk or a danger to the community. (Juarez Decl. ¶ 7.) The Immigration Judge ("IJ") denied Mr. Lewis's bond request. (Id.; see "Bond Decision," Dkt. No. 47-4.)

On March 10, 2021, the IJ sustained the charges of removability and found Mr. Lewis removable as charged. (Juarez Decl. ¶ 8; see "Removal Order," Dkt. No. 47-2.) On August 12, 2021, the Board of Immigration Appeals ("BIA") upheld the IJ's decision on Mr. Lewis's removability. (Juarez ¶ 9; see "BIA Decision," Dkt. No. 47-5.) On September 7, 2021, Mr. Lewis filed a petition for review to the Ninth Circuit. (Opposition at 3.) On September 9, 2022, the Ninth Circuit remanded the case to the BIA and stayed Mr. Lewis's removal. (Id.) Mr. Lewis's case currently remains pending before the BIA. (Id.)

On June 16, 2023, DHS requested a custody redetermination hearing for Mr. Lewis. (See Juarez Decl. ¶ 15.) On June 26, 2023, the IJ denied the motion for a second bond hearing. (See Dkt. No. 54-1.)

//
//
//

### III. LEGAL STANDARD

"A preliminary injunction is an extraordinary and drastic remedy; it is never awarded as of right." Munaf v. Geren, 553 U.S. 674, 689 (2008) (citations omitted). An injunction is binding only on parties to the action, their officers, agents, servants, employees, and attorneys and those "in active concert or participation" with them. Fed. R. Civ. P. 65(d)(2).

"A plaintiff seeking a preliminary injunction must establish that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest." Winter v. Nat. Res. Def. Council, Inc., 555 U.S. 7, 20 (2008). Under the Ninth Circuit's "sliding scale" approach to preliminary injunctions, the four "elements of the preliminary injunction test are balanced, so that a stronger showing of one element may offset a weaker showing of another." All. for the Wild Rockies v. Cottrell, 632 F.3d 1127, 1131 (9th Cir. 2011). A preliminary injunction is appropriate where a plaintiff demonstrates that "serious questions going to the merits were raised and the balance of hardships tips sharply in the plaintiff's favor." Id. at 1135 (internal quotations and citation omitted).

### IV. DISCUSSION

Petitioner argues that his prolonged detention—27 months—without a bond hearing violates his procedural due process rights. (See Motion at 1.) Petitioner is detained pursuant to 8 U.S.C. § 1226(c) based on his aggravated felony conviction. 8 U.S.C. § 1226(c). Under § 1226(c), detention is mandatory and a noncitizen of the United States is not statutorily entitled to a bond hearing. Avilez v. Garland, 69 F.4th 525, 527 (9th Cir. 2023). Notwithstanding § 1226(c), Petitioner contends that his ongoing detention without an additional bond hearing deprives him of procedural due process under the Fifth Amendment.

The Supreme Court has yet to address the constitutional question of whether prolonged detention of a noncitizen without a bond hearing violates due process. See Johnson v. Arteaga-Martinez, 142 S. Ct. 1827, 1835 (2022); Jennings, 138 S. Ct. at 851. However, the Supreme Court has long recognized that a "statute permitting indefinite detention of [a noncitizen] would raise a serious constitutional problem." Zadvydas v. Davis, 533 U.S. 678, 690 (2001). Similarly, the Ninth Circuit has expressed "grave doubts that any statute that allows for arbitrary prolonged detention without any process is constitutional or that those who founded our democracy precisely to protect against the government's arbitrary deprivation of liberty would have thought so." Rodriguez v. Marin, 909 F.3d 252, 256 (9th Cir. 2018). Thus, "district courts throughout this circuit have ordered immigration courts to conduct bond hearings for noncitizens held for prolonged periods under § 1226(c)" on due process grounds. Martinez v. Clark, 36 F.4th 1219, 1223 (9th Cir. 2022); see, e.g., Jensen v. Garland, 2023 WL 3246522, at *7 (C.D. Cal. May 3, 2023); Galdillo v. U.S. Dep't of Homeland Sec., 2021 WL 4839502, at *4 (C.D. Cal. May 7, 2021); Jimenez v. Wolf, 2020 WL 510347, at *3–4 (N.D. Cal. Jan. 30, 2020).

A.  **Likelihood of Success on the Merits**

Most district courts in the Ninth Circuit, including this Court, apply the test in Mathews v. Elridge, 424 U.S. 319 (1976), to evaluate whether due process entitles a petitioner to a bond hearing.  See, e.g., Jensen, 2023 WL 3246522, at *4 (conducting as-applied analysis to detention under § 1226(c)); Hernandez Gomez v. Becerra, 2023 WL 2802230, at *3 (N.D. Cal. Apr. 4, 2023) (same); Henriquez v. Garland, 2022 WL 2132919, at *5 (N.D. Cal. June 14, 2022) (same); Galdillo, 2021 WL 4839502, at *3 (same).  And, in Rodriguez Diaz v. Garland, the Ninth Circuit assumed without deciding that the Mathews test applies to due process claims in the immigration detention context.  53 F.4th 1189, 1206–07 (9th Cir. 2022).

"The fundamental requirement of due process is the opportunity to be heard 'at a meaningful time and in a meaningful manner.'"  Mathews, 424 U.S. at 333 (quoting Armstrong v. Manzo, 380 U.S. 545, 552 (1965)).  Under Mathews, courts consider (1) the individual's interest, (2) the government's interest, and (3) the risk of erroneous deprivation of the right absent further procedures.  Id. at 334.  "Due process is flexible and calls for such procedural protections as the particular situation demands."  Id. (internal quotation marks and citation omitted).

As to the first factor, the individual's interest is "'fundamental': freedom from imprisonment is at the 'core of the liberty protected by the Due Process clause.'"  Hernandez v. Sessions, 872 F.3d 976, 993 (9th Cir. 2017) (quoting Foucha v. Louisiana, 504 U.S. 71, 80 (1992)); see also Zadvydas, 533 U.S. at 690 ("Freedom from imprisonment—from government custody, detention, or other forms of physical restraint—lies at the heart of the liberty that Clause protects.").  Here, Petitioner "undoubtedly has a strong liberty interest to be free from arbitrary or unreasonable imprisonment."  Jimenez, 2020 WL 510347, at *3.  Petitioner has been detained nearly three years and it has been 27 months since his only bond hearing.  "When detention crosses the six-month threshold and release or removal is not imminent, the private interests at stake are profound."  Diouf v. Napolitano, 634 F.3d 1081, 1091–92 (9th Cir. 2011).  "Courts have found that failure to provide bond determinations in cases involving similar detention periods—i.e., 9 to 16 months—violate due process."  Singh v. Barr, 400 F. Supp. 3d 1005, 1021 (S.D. Cal. 2019) (collecting cases); see, e.g., Galdillo, 2021 WL 4839502, at *3 (finding private interest "weighs heavily in Petitioner's favor" where it had been "over 18 months since his only bond hearing").  Thus, this factor weighs heavily in Petitioner's favor.

As to the second factor, Respondent argues that the government has a substantial interest in protecting the public from criminal noncitizens and ensuring their removal.  (See Opposition at 14–15.)  However, as other courts have recognized, the government's interest is not in Petitioner's continued detention but in his continued detention without another bond hearing.  See Jensen, 2023 WL 3246522, at *6; Galdillo, 2021 WL 4839502, at *3.  Given "the minimal cost of conducting a bond hearing, and the ability of the IJ to adjudicate the ultimate legal issue as to whether Petitioner's continued detention is justified," courts have concluded that "the government's interest is not as weighty as Petitioner's."  Lopez Reyes v. Bonnar, 362 F. Supp. 3d 762, 777 (N.D. Cal. 2019).  Further, providing Petitioner with a bond hearing would not

impede Respondent's interest in protecting the public, since the purpose of the bond hearing is to determine whether Petitioner is a flight risk or a danger to the community. See Jensen, 2023 WL 3246522, at *6; Jimenez, 2020 WL 510347, at *3. Thus, while the Court acknowledges that the government has some interest, it does not have a significant interest in detaining Petitioner without a bond hearing.

Finally, the Court considers the risk of erroneous deprivation of the right absent further procedures and the probable value, if any, of additional or substitute procedural safeguards. See Mathews, 424 U.S. at 335. In evaluating the risk of erroneous deprivation in the immigration detention context, the Ninth Circuit has considered "whether the detainee has a statutory right to procedural protections, such as individualized custody determinations and the right to seek additional bond hearings throughout detention." Jensen, 2023 WL 3246522, at *6; see Rodriguez Diaz, 53 F.4th at 1209–10 (finding the risk of erroneous deprivation "relatively small" where petitioner was detained under § 1226(a) and entitled to certain procedural protections). Here, Petitioner is detained under § 1226(c) and therefore does not have a statutory right to additional bond hearings based on materially changed circumstances. It has been 27 months since Petitioner last had the opportunity to be heard or present evidence showing that he is not a flight risk or a danger to the community. In light of the fact that additional procedures are not mandated under § 1226(c), the risk of erroneous deprivation of Petitioner's right is significant.[1] This factor weighs in Petitioner's favor.

After balancing the Mathews factors, the Court concludes that Petitioner is likely to succeed on the merits of his due process claim. Petitioner's 27-month detention without a bond hearing is unreasonable and violates his procedural due process rights.

**B. Irreparable Harm**

Next, Petitioner must establish that he is likely to suffer irreparable harm in the absence of preliminary relief. All. for the Wild Rockies, 632 F.3d at 1135. As discussed above, Petitioner's continued detention without another bond hearing implicates due process. See, e.g., Galdillo, 2021 WL 4839502, at *4. Deprivation of constitutional rights "unquestionably constitutes irreparable injury." Hernandez, 872 F.3d at 994 (quoting Melendres v. Arpaio, 695 F.3d 990, 1002 (9th Cir. 2012)). Because Petitioner is likely to succeed on the merits of his due process claim, he has "carried [his] burden as to irreparable harm." Id. at 995.

---

[1] Respondent contends that because Petitioner previously filed two habeas petitions, he "has had his custody status reviewed four times over the course of his approximately thirty-three months in detention." (Opposition at 10.) However, Petitioner's claims in those petitions were stayed or dismissed pending other class actions, and his custody was not reviewed based on his individual flight risk or dangerousness.

Further, the Ninth Circuit has recognized other "irreparable harms imposed on anyone subject to immigration detention," including "subpar medical and psychiatric care in ICE detention facilities, the economic burdens imposed on detainees and their families as a result of detention, and the collateral harms to children of detainees whose parents are detained." Id. Petitioner has experienced all of these harms. He attests that the conditions at Adelanto are worse than the conditions in the custody of the federal Bureau of Prisons. (Lewis Decl. ¶ 3; see id. ("The way I am treated by the staff, the low quality of the food, and the social isolation I am experiencing makes me concerned about the long-term effects on my overall physical and mental health.").) He has watched his daughter grow up and his mother grow old without him. (See id. ¶¶ 15–16.) These harms are ongoing and imminent because despite the government's request, an IJ denied Petitioner a second bond hearing on June 26, 2023. (See Dkt. No. 54-1.)

### C.  Balance of Equities and Public Interest

Finally, the Court considers the balance of the equities and public interest. "When the government is a party, these last two [Winter] factors merge." Drakes Bay Oyster Co. v. Jewell, 747 F.3d 1073, 1092 (9th Cir. 2014). The Court finds that the balance of equities weigh strongly in favor of granting Petitioner relief. Petitioner has a substantial interest in an individualized bond hearing so he can meaningfully exercise his due process rights and have the opportunity to abate the potential harms described above. Granting relief would not prevent the government from proving to a neutral decisionmaker whether Petitioner poses a flight risk or a danger to the community such that his continued detention is necessary. Respondent has not shown that conducting a bond hearing would cause the government inordinate hardship or burden. Any de minimis cost the government may bear is outweighed by the public's strong interest in upholding constitutional rights. See Preminger v. Principi, 422 F.3d 815, 826 (9th Cir. 2005) ("Generally, public interest concerns are implicated when a constitutional right has been violated, because all citizens have a stake in upholding the Constitution."). The public is better served by ensuring that the government does not expend its resources detaining individuals unnecessarily and without adequate process. See Lopez v. Heckler, 713 F.2d 1432, 1437 (9th Cir. 1983) ("Society's interest lies on the side of affording fair procedures to all persons, even though the expenditure of governmental funds is required.").

In conclusion, Petitioner has shown that he is entitled to the requested relief. The Court **GRANTS** the Motion and **ORDERS** Respondent to provide Petitioner with an individualized bond hearing within 30 days after entry of this Order.

### D.  Burden of Proof at Bond Hearing

Respondent contends that if a bond hearing is required, the government should not bear the burden of proving by clear and convincing evidence that Petitioner's detention is justified. (See Opposition at 19–21.) Respondent questions whether Singh v. Holder, 638 F.3d 1196, 1204 (9th Cir. 2011), remains good law. (See id. at 20.) In Singh, the Ninth Circuit held that in bond hearings for immigration detainees, the government must prove by clear and convincing evidence that continued detention is justified. 638 F.3d at 1204–05. Singh considered the burden of proof

for bond hearings that were previously held to be statutorily required in Casas-Castrillon v. Dep't of Homeland Sec., 535 F.3d 942 (9th Cir. 2008). This statutory right to a bond hearing was later rejected by the Supreme Court, see Jennings, 138 S. Ct. at 847–51, which, according to Respondent, means that Singh no longer applies (see Opposition at 20). See also Avilez, 69 F.4th at 535 (recognizing that Jennings abrogated Casas-Castrillon).

 Contrary to Respondent's argument, Jennings did not disrupt the constitutional principles underlying the burden of proof analysis in Singh. Although the Ninth Circuit has declined to address whether Singh remains good law, it noted that Singh was decided on principles of procedural due process and the substantial liberty interest of detained individuals, not on the statutory grounds overturned in Jennings. See Rodriguez Diaz, 53 F.4th at 1201–02; Jensen, 2023 WL 3246522, at *7. The Court finds that Ninth Circuit case law continues to support the conclusion that the government bears the burden of proving by clear and convincing evidence that Petitioner poses a flight risk or a danger. See Martinez, 36 F.4th at 1231 ("[T]he BIA properly noted that the government bore the burden to establish by clear and convincing evidence that [the petitioner] is a danger to the community."); cf. Rodriguez Diaz, 53 F.4th at 1201–02 (finding that the clear-and-convincing standard was not required for detainees who had procedural protections under § 1226(a), but declining to extend this to those under § 1226(c)). In the absence of explicit direction from the Supreme Court or the Ninth Circuit, most district courts in this circuit continue to follow Singh. See, e.g., Jensen, 2023 WL 3246522, at *8; Lopez v. Garland, 631 F. Supp. 3d 870, 882 n.9 (E.D. Cal. 2022). Accordingly, the burden is on the government to prove by clear and convincing evidence that Petitioner is a flight risk or a danger to the community to justify his continued detention.

## V.  CONCLUSION

 For the reasons above, the Court **GRANTS** Petitioner's Motion and **VACATES** the August 7, 2023 hearing. The Court **ORDERS** Respondent to provide Petitioner with an individualized bond hearing within 30 days after entry of this Order, or release Petitioner if the government fails to hold the bond hearing. At the bond hearing, the government shall justify by clear and convincing evidence Petitioner's continued detention.

**IT IS SO ORDERED.**